My name is Christina Abraham, and I represent the plaintiff appellant Kira Mitchell in the matter before the court. We ask this court to reverse summary judgment and remand for trial as the record contains evidence that Ms. Mitchell's termination was the result of gender discrimination. It is undisputed that Ms. Mitchell meets Elements 1 and 3 of a prima facie claim under McDonnell Douglas. She's a woman, and her employment was terminated. The court improperly dismissed evidence that she meets Element 2, that she was meeting her employer's legitimate performance expectations. The court improperly dismissed evidence that Ms. Mitchell meets Element 4, that she was treated less favorably than her comparators, who are not female. And the court improperly dismissed evidence of pretext. And because this analysis merges with the second element, I'll discuss pretext together with the second element. The district court credited Exxon's rationale for improperly and improperly drew inferences in its favor, rather than viewing the facts in the light most favorable to Ms. Mitchell, as is required under Reeves and Anderson. Although the court should review the record as a whole, per Reeves, it was required to disregard all evidence favorable to the moving party that the jury is not required to believe. Credibility judgments, and weighing of evidence, and drawing reasonable inferences from the fact are all functions of the jury. And if there is a genuine issue of material fact as to any element of the claim, per Celotex Corp., summary judgment must be denied. Because there were genuine issues of material fact as to two elements of the claim and to pretext, summary judgment should have been denied. Ms. Mitchell was meeting her employer's legitimate performance expectations. Her initial preliminary performance rating was a B. Mueller and Hayes, her supervisors, initially ranked her as a B, which means a strong contributor. Why wouldn't the final grade of the D control? Because that process in and of itself was highly influenced by the preliminary assessment. Every person in her peer assessment group left with the same rank that they were preliminary assigned. And so the preliminary rank and the way that she was discriminated against in the assignment of that preliminary rank shows that she was discriminated against. It sealed her fate. Your argument, those ipsy dicks, we've got a huge company with tens of thousands of employees with a written policy as to how it goes. And I'll be honest with both parties, it's complicated. And for us to really understand it takes a lot of time. Once we do, there's these various steps that occur. You haven't challenged the nature of the company's review process. That's not at issue. You're saying the way the company applied the process here was discriminatory on elements two and four. And you're saying there's genuine material fact with regard to those two elements. You've got to explain to us, though, how the final grade would be discriminatory. Because the process provides for both a preliminary assessment and then the overall assessment at the end. So there were a lot of deviations from the policy as it was written and in practice. Number one, the preliminary assessment is derived from a self-assessment that's done by the employee. And then there are knowledgeable other feedback that their peers provide for them. And then from that, a preliminary assessment is given from the local supervisor. You're describing it to me, but tell me what the problems were when it got to the level of the final grade of D. I think that part is a red herring. Because that preliminary grade that she was assigned, along with everybody in her peer assessment group, is the grade that she left with. And it's the local supervisor that presents at the peer assessment groups. And they're supposed to present on things like the self-assessment and the knowledgeable others feedback from the beginning. What evidence do you have that the final meeting was discriminatory? The final meeting is a red herring. The preliminary assessment is what sales are. Let me try to ask the question again, OK? With the stage that we are in, in regards to litigation, what evidence do you have to support the conclusion that it's a red herring? The fact that every employee in that preliminary assessment, in the peer assessment group, left with the same rank as a final rank that they entered with. In other words, that the preliminary rank that the supervisors gave them was determinative or highly influential, such that in Ms. Mitchell's case, it tainted the process for her. I don't think that's correct. That's not correct. Because one went from a B to a C. Say that again? One went from a B to a C. No. No, Ms. Mitchell was first assigned a B. Right, she ended with a D. Then after it was determined that one of the local lab techs had to receive a D, which is a deviation from the process, she was the one that was selected to receive the D, even though a male employee, Daniel Pitts, was preliminary assigned a C. Why do you say that that was mandated by the process? That was not mandated by the process. That someone had to get a D. That was a decision that was arbitrarily made. That was a deviation from the process. There is nothing in the policy that requires it. And moreover, nothing in Mueller's own Northern Cluster group that shows that that was applied to anybody else. We don't have the responses by Sanchez to the emails, though. So we know that it's coming one way, but not the other. We don't know the second half of that story as to why someone had to get a D. I think that that is what raises the pretext. It's the deviation from the practice and the policy that raises a reasonable inference that there was pretext. When the decision was made, somebody had to receive a D. That was not part of the process. How is that connected to her sex, then? Because she was in a group of three employees. She was the only female. And she had just been, before it was determined somebody had to receive a D, she had been assigned a B, which was higher than Pitts. So under an objective assessment, a reasonable jury can infer that her supervisors, Mueller and Hayes, thought that she performed better than Pitts and at least equal to Aguirre. But the assignment group is different than who she was working with at the location. So the assignment group did have a female in it, Terry Davis. She was assessed by different supervisors. So unlike Kwon and Palombo, she was assessed by different supervisors. Didn't the supervisor lose his job as well? Not, are you talking about Jeff Hayes? Yeah. He did eventually, but he's a supervisor that worked at a different plant. We have no idea, nor is it relevant, I think, why he was removed. But what I will say is that Karen Hasberger, who was Ms. Mitchell and the other three lab tech's direct supervisor at the Cicero plant just months prior, herself was also let go through that MLRP performance assessment process and replaced by a male, just like Ms. Mitchell was replaced by a male. So I think that, per Rudin and per Reeve, she's met the prima facie elements of her case and she's shown evidence of pretext in the sense that she can show that her supervisors thought that she performed better than Pitts initially. She received a D. She first received a B when she was, when Mitchell, Aguirre. The very word preliminary means exactly what it suggests. This is preliminary. Until we have brought all of the employees in this particular assessment group together, we will assign the final grade. Is it your suggestion that because her grade changed, it must be connected to a discriminatory reason? It's my argument that reasonable inferences could be drawn in either way, and that's why it should have been, that should have gone to a jury. Because she was initially preliminary assessed at a B because we can see that the preliminary assessments were determinative of the final outcome and that that peer assessment group meeting was a formality to just rubber stamp the preliminary assessments. And we can see that because every single person in her peer assessment group left with the same grade that they started with. In other words, she was never going to stand out amongst her peers with a D and them having a B. Your Honors, I would like to answer any other questions that you have, but I'd also like to reserve the rest of my time for rebuttal. Certainly, Counsel. Thank you. Mr. Duffy. Good morning, Your Honors, and may it please the Court. My name is Patrick Duffy, and I represent Defendant Appeli, ExxonMobil Corporation. This Court should affirm the decision of the District Court granting summary judgment in favor of ExxonMobil as there is no evidence from which a reasonable finder of fact could conclude that the termination of plaintiff's employment was the product of unlawful discrimination. So we understand the hierarchy of the company, Mr. Duffy. Hayes supervises Mitchell, and Mueller supervises Hayes. Where does Sanchez fall into that hierarchy? Sanchez does not fall directly in that hierarchy. He had no supervisory authority over Mitchell at all. He's the plant manager of the Cicero plant, and he reports up to Hank Mueller the same way that Jeffrey Hayes did, but no direct supervisory authority over plaintiff here. So why is his information important for purposes of consideration of her review? Because he's the supervisor of Cicero? So Sanchez had no involvement at all in plaintiff's performance assessment. He was asked to either confirm or realign Hayes' thinking, since Sanchez is on site there at Cicero, while Hayes is not. But there's no evidence in the record whatsoever that he ever responded to that, no evidence that he participated in the assessment group meetings or participated in the assessment group meetings of any other office clerical employee that is the category that plaintiff fell into here. And we don't have his response emails, but we know he's being consulted, so he's got some role, right, Sanchez? Not necessarily, Your Honor, and that's in particular with respect to the final assessment that takes place here. He had no involvement in that at all. He may be able to provide some insight, and that was what he was consulted for, you know, confirm or realign my thinking were the exact words of the email, but he has no direct role in the process here because he had no supervisory authority over the employee. Confirm or redirect my thinking sounds like they're asking for his thoughts and his input. Correct. And we don't know what that was. You're right, but his testimony was that he doesn't recall receiving the email, he doesn't recall responding to the email, he doesn't recall ever weighing in on the question that was asked. So Hayes was reaching out to try to get some feedback from a person who's on the ground there in Cicero, and there's no evidence that he ever provided that feedback and had no role in the feedback process here. So it's a decision that was ultimately made by Jeffrey Hayes in terms of, you know, how he would assess the employees under his supervision in the Cicero lab, and the only evidence in the record about how he came to that determination was based on his personal review of each employee's strengths and contributions throughout the year. There's absolutely no evidence at all that he did not honestly believe that assessment. So there's no evidence of pretext and no evidence that gender played any role whatsoever in the decision here. Well, he lost his job too, right? Well, Jeffrey Hayes did lose his job as well. Correct. He was assessed as the equivalent of a D for his employment category and opted to retire under ExxonMobil's processes. Can we presume the pay-in-lieu requirement includes not just a nondisclosure agreement, but an agreement not to sue? Your Honor, it does include a release of claims. That's correct. So ultimately, the primary issue here is that there is no evidence in the record whatsoever that gender played a role in the termination of plaintiff's employment. Even looking at her coworkers in the Cicero lab, Pitts and Aguirre, there's no evidence that they're proper comparators in the context of ExxonMobil's assessment process because they were not in the same assessment group. And as Judge Breyer pointed out, there is no evidence at this last stage of the process that there was any discrimination in that process. And in fact, the other female in the group performed just as well as the two males in the group. So that defeats any sort of inference of discrimination or that that process was discriminatory. And also to briefly address some of the broader evidence regarding the record as a whole, there's no evidence considering the record as a whole of any sort of pattern or practice of discrimination. The district court properly concluded that the material in the record    that plaintiff attempted to rely upon from separate litigation between the parties was properly excluded because they were never disclosed as part of the Rule 26 disclosures. The district court did not abuse its discretion because it was a straightforward application of Rules 26 and 37 of the Federal Rules of Civil Procedure. Nevertheless, the court also took those materials into consideration and found that they did not support any sort of finding of discrimination here, which is the same conclusion that the court in that separate case came to, that those materials did not support any sort of inference of discrimination. And so viewing the record holistically here or under the McDonnell-Douglas burden-shifting framework, the district court properly concluded that there was no evidence of discrimination. And unless the court has any further questions, I'll cede the remainder of my time and will respect the request that the court affirm the decision of the district court. Thank you. Thank you very much. Ms. Abraham, anything further? Yes. Just a few points for rebuttal. Sanchez's failure to recollect doesn't rebut the reasonable inference that a jury could make that when his supervisors asked him to provide input, he provided it, and shortly thereafter, Ms. Mitchell's rank was lowered from a B to a D. And when Ms. Mitchell was asking for the reason for her ranking and termination, McGuire from HR directed her to Sanchez for answers. The lack of standouts justification came for the first time from Sanchez two months after the final assessment had been made. Sanchez was deposed, correct? Correct, yes. How long was that deposition? Gosh, I can't remember, but it was at least five hours. Oh my God, okay. Yeah. Exxon wants to draw rigid lines around comparator groups, but Coleman and Humphreys instruct otherwise. Ms. Mitchell, Pitts, and McGuire were similar enough, and there's evidence to show that the preliminary ranks were determinative of the final outcome. The distinctions go to weight and not admissibility and are therefore for a jury to evaluate. Intent can be shown circumstantially. That's why we have an indirect method of proof. Managers deviated from Exxon's own ranking process. They contradicted their own initial assessments of the lab techs, and the people who applied the policy did so in a way that targeted Ms. Mitchell. This is classic pretext under Reeves and Ortiz. So she wasn't let go because of performance. And with that, I would ask the court to reverse summary judgment. Thank you. Thank you. Thank you, counsel. The case is taken under advisement.